The State ex rel. Buchanan vs. Kellogg and others.

THE STATE EX REL. BUCHANAN, Appellant, vs. KELLOGG and others, Respondents.

*January 16 — April 30, 1897.*

*Intoxicating liquors: License: Revocation: Mandamus: Pleading.*

1. Under sec. 1559, S. & B. Ann. Stats. (providing that if upon the hearing of a petition for the revocation of a license to sell intoxicating liquors "the board shall find the complaint to be true, *the license shall be revoked,* and if untrue the proceedings shall be dismissed," etc.), the board is bound to find the complaint true or untrue according to the evidence; and if the undisputed evidence and admitted facts establish its truth the board may be compelled by *mandamus* to revoke the license, even though a majority have voted that the charges were untrue.

2. Where it appears from the relation for a writ of *mandamus* in such a case that the undisputed evidence showed the charges of the complaint to be true and it is alleged that the council wilfully, unreasonably, persistently, and negligently refused to revoke the license, and wilfully and unreasonably abused their power and authority, a return alleging merely that there was conflicting testimony on the trial and that the majority voted that none of the charges of the complaint were true, but not otherwise denying the allegations of the relation or indicating upon what particular facts the testimony was conflicting, is in effect an admission of the truth of the relation, and the peremptory writ should be awarded.

APPEAL from a judgment of the county court of Winnebago county: C. D. CLEVELAND, Judge. *Reversed.*

The case is stated in the opinion.

For the appellant there was a brief signed by *Sweet & Armington,* attorneys, and a separate brief by *B. E. Van Kuren,* counsel, and oral argument by *W. N. Armington* and *B. E. Van Kuren.*

For the respondents there was a brief by *J. H. Davidson,* attorney, and a separate brief by *Eaton & Weed* and *John F. Kluwin,* attorneys for *Krippene* and others, and oral argument by *Mr. Davidson* and *Mr. H. I. Weed.* They con-

The State ex rel. Buchanan vs. Kellogg and others.

tended that the determination of the question whether the charges against the saloon keeper were true required the exercise on the part of the common council of official judg-ment and discretion.   It was not a ministerial duty, and could not be controlled by *mandamus*. *State ex rel. C., C. & C. R. Co. v. Whitesides*, 3 L. R. A. 777; High, Extr. Leg. Rem. §§ 24, 34, 42, 47, 238; 14 Am. & Eng. Ency. of Law, 141; *People ex rel. Willing v. Meakin*, 56 Hun, 626; *People ex rel. Funke v. Board of Excise of Flushing*, 24 id. 195; *People ex rel. Belden v. Contracting Board*, 27 N. Y. 378; *Hoole v. Kinkead*, 16 Nev. 217; *State ex rel. Gill v. Com. Council of Watertown*, 9 Wis. 254; *State ex rel. Winslow v. Supervisors of Mt. Pleasant*, 16 id. 614; *Waupun v. Chester*, 61 id. 401.

The following opinion was filed February 23, 1897:

CASSODAY, C. J.   This is an application for a writ of *man-damus* to compel the mayor and common council of Oshkosh to revoke a license held by one August Kargus for selling intoxicating liquor.   The essential allegations in the alterna-tive writ are to the effect that during the times mentioned the relator was a resident, freeholder, and taxpayer in Osh-kosh; that she was the mother of two minor boys, one twenty and the other seventeen years of age; that the mayor and the twenty-six aldermen, named therein, were each and all duly elected and duly qualified and entered upon the discharge of their respective duties as such officials; that the city ordinance prohibited any person so licensed to sell liquor from giving away or selling any liquor on Sundays; that August Kargus kept a saloon in the city, in close prox-imity to the residence of the relator, and was duly licensed by the city to sell liquor, and his license had not expired; that January 23, 1896, the relator made and filed with the city clerk a complaint in writing, as provided by the stat-utes, alleging, in effect, that said Kargus had sold liquor to the six minors, therein specified, including the two sons of

The State ex rel. Buchanan vs. Kellogg and others.

the relator, and also sold liquor on Sunday, as therein specified, which allegations were true, and also that said Kargus was keeping a disorderly, riotous, and improper house, and praying that his said license be revoked; that a copy of which complaint, duly verified, was thereto attached; that January 28, 1896, at a regular meeting of the common council, the said complaint was improperly referred to the police committee and city attorney, for the purpose of hindering and delaying action upon the same; that February 11, 1896, at a regular meeting of the common council, the said complaint was reported back to the council, with the recommendation that the complainant be required to give security for costs before summons issued, and the same was adopted, requiring her to file security for costs; that said resolution was adopted for the purpose of preventing any action being taken upon her petition, as she had no property, except a small homestead; that February 19, 1896, the relator filed with the city clerk an undertaking for costs, as required by said resolution; that February 20, 1896, summons was issued as provided for by law, and made returnable at a regular meeting of the common council held February 25, 1896; that February 25, 1896, at a regular meeting of the common council, the respective parties appeared by attorneys; that the complaint was then read, and the said Kargus, for answer, put in oral and general denial; that, without further proceedings in said matter, the council adjourned until March 5, 1896; that March 5, 1896, at a regular meeting of the council, seven witnesses were sworn, and testified in behalf of the complainant, after which the council adjourned until March 12, 1896; that March 12, 1896, at a regular meeting of the council, the case was again taken up, and six witnesses were sworn, and testified in behalf of the complainant, when she rested her case, and the council again adjourned until the evening of March 17, 1896; that on the evening of March 17, 1896, the council, without having taken up the matter,

adjourned until the evening of March 24, 1896; that on the evening of March 24, 1896, at a regular meeting of the council, the matter was taken up, and seven witnesses were sworn on behalf of Kargus, including himself, whereupon both sides rested, and thereupon the council adjourned until March 31, 1896; that one of such witnesses, and a son of the relator, among other things, testified to the effect that he was twenty years of age, and was in the said saloon of said Kargus, December 25, 1895, and got beer and whisky about half a dozen times; that he had been in said saloon nearly every day, and had bought beer or whisky nearly every day from the said Kargus; that he had been in the said saloon nearly every Sunday, and that he had seen Kargus sell liquor on Sunday to five other minors named; that he had never had any written order from his father or mother or anybody else to get liquor from August Kargus; that the other son of the relator, as such witness, testified to the effect that he was seventeen years old; that he had drank liquor in the said saloon December 25, 1895; that Kargus' son, who was attending the saloon, had given it to him; that he drank three times that day, twice August Kargus gave it to him, and the third time the boy had given it to him; that he never had any written order from his father or mother or anybody else to get liquor from August Kargus; that he had seen four other minors named buy liquor several times and drink in that saloon; that six other minors named, as such witnesses, testified to the same effect; that the said Kargus testified in his own behalf, and admitted that he had sold the two sons of the relator liquor a good many times; that he had sold to one Kleist, one of the other minor witnesses named, on December 25, 1895, a good many times; that he had a written order from the father of Kleist, but refused to produce it, and did not claim to have any other written order or consent; that he sold beer and whisky to three other minors, who were witnesses named, in that

saloon; that Kargus did not offer any evidence denying that he had sold beer or whisky to the said minors, or any of them, without the written order of their parents, nor that he had been engaged in selling liquor for several months prior to December 25, 1895, on Sunday, and no such evidence was offered or received; that the evidence was undisputed that he sold or gave beer or whisky or both to all of said minors without a written order from their parents, or any one else, except in the case of Kleist mentioned; that it was undisputed that he did sell liquor, beer, or whisky nearly or quite every Sunday for several months prior to December 25, 1895; that nevertheless the common council had wilfully, capriciously, unreasonably, and persistently neglected and refused to find that said August Kargus sold liquor to minors without a written order of their parents or any one else, and had refused to find that he sold liquor on Sunday, and had wilfully and unreasonably and persistently and negligently refused to revoke the license of said Kargus, and had wilfully and unreasonably abused their power and authority.

The verified answer and return of the mayor and common council to the alternative writ of *mandamus* mentioned, after reciting the pendency of such proceedings before the common council for the purpose of revoking such license, stated, in effect, for cause, reason, and excuse why they had not revoked the license, that said Kargus appeared at the time and place named and denied the said complaint; that thereafter each party produced witnesses, and were heard by counsel before said mayor and common council; that the testimony produced by said parties was conflicting; that after the close of the testimony, and after argument by counsel, the mayor and said common council, by a vote of nine in the affirmative and twelve in the negative, refused to adopt a resolution to the effect that the allegations in the complaint of the relator against August Kargus, a saloon keeper, for the revocation of his license, are true in refer-

ence to selling liquor to minors without a written order from their parents or guardians; that the mayor and common council, by a vote of ten in the affirmative and eleven in the negative, refused to adopt a resolution to the effect that the allegations in the complaint of the relator against August Kargus, a saloon keeper, for the revocation of his license, are true in reference to the selling of liquor on Sundays; that the mayor and common council, by a vote of four in the affirmative and seventeen in the negative, refused to adopt a resolution to the effect that the allegations in the complaint of the relator against August Kargus, a saloon keeper, for the revocation of his license, are true in reference to keeping an improper house; that said proceedings were had and said hearing procured before the mayor and common council under secs. 1558, 1559, S. & B. Ann. Stats.; that a majority of the aldermen present found the complaint untrue, and that the proceedings were dismissed; that, therefore, they could not cause the license of said Kargus to be revoked as by said writ they were commanded.

At the close of the trial and hearing the trial court refused to award the writ of *mandamus*, and ordered and adjudged that the petition therein be, and the same was thereby, dismissed, and that the common council go hence without day, and that they have and recover from the relator herein their costs and disbursements of this action, taxed at $35.23. From that judgment the plaintiff brings this appeal.

It will be observed that the answer to the relation does not deny any allegation contained therein. The only defense or claim relied upon is that there was conflicting testimony on the trial before the common council, and that a majority of the council voted that none of the allegations of the complaint in respect to selling liquor to minors, or on Sunday, or keeping an improper house, were true. The answer fails to indicate upon what particular fact the testi-

The State ex rel. Buchanan vs. Kellogg and others.

mony was conflicting.  Since it admits, in effect, that the accused sold liquor on Sunday, as charged, and also sold liquor to minors without the written order of their parents or guardians, as alleged, we must assume that the conflicting testimony mentioned related to some other and immaterial fact.   In other words, the answer concedes the guilt of the accused as charged, and that the common council refused to revoke his license, notwithstanding such guilt; and so the trial court refused the *mandamus*, as we assume, on the ground that the majority of the council so voted.   "A proceeding by *mandamus* is essentially a suit, and when issue is joined by the return it becomes a civil action, within the meaning of the statutes, and as to the form and sufficiency of the several pleadings must be governed by the same rules which prevail in other civil actions."  *State ex rel. G. B. & M. R. Co. v. Jennings*, 56 Wis. 113.   The admissions in the answer in this case therefore are just as conclusive upon the defendants as the admissions in an answer in any civil action.  *Id.*

The question recurs whether, upon such facts, so admitted by the pleadings, the common council were at liberty to so refuse to revoke the license.   The complaint was properly made to the common council, and the hearing had as prescribed by the statutes.   S. & B. Ann. Stats. sec. 1558. The statute also provides that "If upon such hearing, the board shall find the complaint to be true, *the license shall be revoked*, and if untrue, the proceedings shall be dismissed without costs to the accused, and if the complaint be found by the board to be malicious and without probable cause, the costs shall be paid by the complainant, and the board may require security therefor before issuing the summons, as aforesaid."  S. & B. Ann. Stats. sec. 1559.   Manifestly, the common council were bound to find the complaint to be true or untrue, according to the evidence introduced.  *State ex rel. Higgins v. Mayor & C. C. of Beloit*, 74 Wis. 267.

They could not rightfully, and against the undisputed evidence and the admitted facts, find the complaint to be untrue.   As a general rule, *mandamus* only lies where there is no other adequate remedy, and cannot be availed of as a writ of error.   *In re Atlantic City R. R. Co.* 164 U. S. 633.   Here there is no other adequate remedy.   But so long as an inferior court or tribunal acts within the scope of its authority touching any matter about which it must exercise its discretion, its action cannot be revised by *mandamus.*   *Hull v. Sup'rs of Oneida Co.* 19 Johns. 259; *S. C.* 10 Am. Dec. 223; *Ex parte Railway Co.* 101 U. S. 711; *State ex rel. Comstock v. Joint School Dist. No. 1,* 65 Wis. 631.   This is illustrated by the well-settled rule that an inferior court may be compelled to settle a bill of exceptions, but cannot be compelled to sign a particular bill of exceptions.   *Ex parte Bradstreet,* 4 Pet. 102; *Chateaugay O. & I. Co., Petitioner,* 128 U. S. 544.

It is not the province of a *mandamus* to determine and adjudicate disputed rights, but to enforce undisputed rights and duties.   *State ex rel. Pfister v. Mayor & Aldermen of Manitowoc,* 52 Wis. 427, and cases there cited.   But in the case at bar, as indicated, there were no disputed facts to be determined, and no discretion to be exercised.   The return to the alternative writ denied no allegation therein, and so admitted the several charges contained therein, including the charges that the defendants, as mayor and common council, wilfully, unreasonably, persistently, and negligently refused to revoke the license, and wilfully and unreasonably abused their power and authority.   Such being the admitted facts, the peremptory writ of *mandamus* should have been awarded. This conclusion is supported by numerous authorities.   *Prospect Brewing Co.'s Petition,* 127 Pa. St. 523; *Comm. ex rel Century Co. v. Philadelphia,* 176 Pa. St. 588; *Zanone v. Mound City,* 103 Ill. 552; *Illinois State Board of Dental Examiners v. People ex rel. Cooper,* 123 Ill. 227; *State ex rel. Blenkenship v. Texas County Court,* 44 Mo. 230; *Amperse v. Com-*

*mon Council of Kalamazoo,* 59 Mich. 78; *McLeod v. Scott,* 21 Oreg. 94; Merrill, Mandamus, § 40. Thus in the last Illinois case cited it was held: "A public officer or inferior tribunal may be guilty of so gross an abuse of discretion, or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law. In such case *mandamus* will afford a remedy. The discretion vested in official bodies must not be exercised arbitrarily, for the gratification of feelings of malevolence, or for the attainment of merely personal and selfish ends, but for the public good, and should be controlled by an honest judgment, and not by passion or prejudice." So, in the first of the Pennsylvania cases cited, it was held, in effect, that the return to the alternative writ requires the greatest possible certainty, or it will be regarded as insufficient. See, also, *Schend v. St. George's German Aid Soc.* 49 Wis. 241; *State ex rel. Hawley v. County Board of Sup'rs of Polk Co.* 88 Wis. 355. This last case is the same in principle, as to the functions of a *mandamus,* as the case at bar, and hence the discussion need not be further continued.

*By the Court.*— The judgment of the county court of Winnebago county is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff, awarding the peremptory writ of *mandamus* as prayed.

A motion for a rehearing was denied April 30, 1897.