STATE EX REL. JONES, Appellant, vs. BURKE, Mayor, and others, Respondents.

*October 8—October 26, 1909.*

*Statutes: Construction: Schools: Fixing amount to be raised: Powers of school boards: General charter law.*

1. Where it is sought to show that the provisions of the general charter law relating to schools do not apply to a city adopting that law in its entirety, and that the provisions of a special charter do apply, the language relied on to express such intent should be reasonably plain, and it should not be extended by implication or by doubtful construction so as to vest important powers in different bodies in cities operating under a general law.

2. Under the special charter of the city of Beaver Dam the power to determine the amount of school moneys to be raised was vested in an elective school board. The city adopted the general charter law, under sec. 925—113 of which "the election and organization, powers and duties" of the board were not affected. That section was subsequently repealed and a new section enacted, providing that where there was an elective board "the plan of school organization and management" should continue until changed by vote of the electors. *Held*, that the power to determine the amount of school moneys to be raised was not a part of "the plan of school organization and management," and that after the enactment of the new section (sec. 925—113, Stats.: Laws of 1907, ch. 480) that power was in the common council, being vested in that body by other provisions of the general charter law.

APPEAL from orders of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Order quashing alternative writ affirmed; appeal dismissed as to other orders.*

This is an appeal from parts of three alleged orders. One of such orders quashes an alternative writ of *mandamus* sued out to compel the mayor and common council of the city of Beaver Dam to levy the amount of school taxes certified by the school board to the city council for the year 1908.

For the appellant there were briefs by *George B. Swan,* attorney, and *C. M. Davison,* of counsel, and oral argument by *Mr. Swan.*

*John C. Healy,* as city attorney, and *M. E. Burke,* of counsel, for the respondents.

BARNES, J. Under the special charter of the city of Beaver Dam, as amended by ch. 96, P. & L. Laws of 1859, the power was vested in the school board to determine and certify to the common council by July 1st in each year the amount of money necessary to support the schools of the city for the ensuing year, and it was made incumbent on the common council to levy the amount so certified for school purposes. *State ex rel. Ordway v. Smith,* 11 Wis. 65. The power of the school board was materially curtailed by sec. 4, subch. X, ch. 83, Laws of 1885; but we may assume for the purposes of this case that ch. 135, Laws of 1889, substantially restored to it the powers conferred by the law of 1859, and imposed upon the common council the duties in regard to making levies for school purposes that were imposed by such act, and we take it as granted that prior to the adoption of the general charter law in its entirety by the city of Beaver Dam in 1903 the common council of such city had no voice in determining the amount of money that should be levied for school purposes, provided the school board performed its statutory duty to determine and certify the amount that should be raised.

Sec. 925—113 of the general charter law, as it stood when adopted by the city of Beaver Dam in 1903, provided:

"In every city which shall adopt this chapter for its government, if there shall be at the time of such adoption a board of education or school board elected by the people under the provisions of its charter, . . . the election and organization, powers and duties of such board shall not be affected by this chapter, and such system shall continue until changed by a vote of the electors of the city."

The school board of Beaver Dam is an elective one, and it is one of the contentions of the appellant that the provisions in the general charter law above referred to retained in and reserved to such school board all the rights and powers it possessed under the special charter of the city, including the right to compel the city council to levy such sums for school purposes as were determined upon by the school board and certified by it to the common council.

By ch. 480, Laws of 1907, sec. 925—113, Stats. (1898), was repealed and a new section was adopted in lieu thereof. This act provided that as to cities other than those of the first class adopting the general charter law, when the school board was elective at the time of such adoption, "the plan of school organization and management shall continue until changed by a majority vote of the electors of such district." This amendment was in force at the time the common council of Beaver Dam refused to levy the amount of money for school purposes determined and certified by the school board.

We deem it unnecessary to decide whether the general charter law at the time it was adopted by the city of Beaver Dam gave the school board of the city the right to determine the amount of school taxes that should be raised in a given year and the right to compel the city council to levy the amount so determined. If such right was retained in the school board it was because such law authorized it to exercise the *"powers* and *duties"* theretofore exercised under the

special charter.   The law of 1907 made a radical change in the verbiage and we think in the meaning of sec. 925—113. The right to exercise the powers and duties conferred by the old charter was no longer preserved to the school board. Instead, the "plan of school organization and management" was continued as it existed under the special charter.   We are unable to see how the making up of the school budget, coupled with the right to compel a levy of the amount stated therein, is any part of the plan of school organization or school management.   It is certainly no part of the organization, and it seems plain that it is no part of the management as that term is ordinarily used and understood.   The purpose of enacting the general charter law was to secure uniformity in city government and in the method of running the various departments thereof.   Where it is sought to show that the provisions of the general law relating to schools do not apply to a city adopting the law in its entirety, and that the provisions of a special charter do apply, the language relied on to express such intent should be reasonably plain, and it should not be extended by implication or by doubtful construction so as to vest important powers in different bodies in cities operating under a general law.   The legislature must have had some purpose in mind in making the change which it did make in this statute, and to hold that because the "plan of organization and management" of the schools of this city should remain unchanged the common council was divested of the power to determine the amount of school moneys that should be raised, which power is otherwise plainly conferred on the common council by the general law, would, we think, be unwarranted.

*By the Court.*—The order quashing the alternative writ of *mandamus* is affirmed.   As to the other alleged orders appealed from in part, the appeal is dismissed.